UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11290-RWZ

DAYSE FIGUEROA

v.

BANK OF AMERICA, N.A.
and FEDERAL NATIONAL MORTGAGE ASSOCIATION

MEMORANDUM OF DECISION

November 26, 2012

ZOBEL, D.J.

Plaintiff Dayse Figueroa ("Figueroa") sues defendants Bank of America, N.A. ("BANA") and Federal National Mortgage Association ("Fannie Mae") for alleged predatory lending and wrongful foreclosure. Defendants now move to dismiss.

## I. Background

These facts are set forth in the complaint.

The house at issue in this suit is located at 45 Assunta Road in Revere, Massachusetts. Figueroa purchased the property for $425,000 in March 2006, financed by a loan from Fremont Investment and Loan in the amount of $403,750. Her monthly payment on that loan amounted to approximately $3,147.

About eight months later, in November 2006, Figueroa refinanced her original mortgage taking out two new loans. The new loans were originated by Greenpoint

Mortgage Funding ("Greenpoint"). The first had a principal balance of $387,600, with initial monthly payments of $2,467 for the first ten years followed by monthly payments of $3,115 for the next twenty years. The second loan in the principal amount of $94,000 called for monthly payments of $1,068. Together, the new loans provided Figueroa with nearly $78,000 more than she needed to pay off her original loan; however, Greenpoint charged her closing costs of more than $15,000, leaving her with less than $63,000 excess cash from the two new loans.

At the time she took out her new loans, Figueroa's income derived primarily from her work as a house cleaner, for which she earned about $4,000 per month.[1] She also hoped to rent out the second unit in her house for $2,000 per month. In addition, she owned several other properties that were, however, heavily encumbered and generated only a small amount of income each month after expenses. The loan application lists her as having no income but $2,000,000 in real property assets; in fact, she owned only $1,600,000 in real property, and all but $180,000 of those assets were encumbered.

Figueroa subsequently defaulted on the loans. In September of 2009, her mortgages were assigned to BAC Home Loans, LP (now merged with BANA) and then to Fannie Mae. Figueroa applied for a loan modification, but Fannie Mae nevertheless

---

[1] The complaint actually alleges that Figueroa earned "approximately $4,000 per week" as a house cleaner. Docket # 1, Ex. A ("Complaint") ¶ 18. The court assumes that "per week" should read "per month," as according to the Bureau of Labor Statistics the median annual wage for housekeeping cleaners in Massachusetts in May 2006 was only $22,080 per year (about $425 per week, or $1840 per month). See Bureau of Labor Statistics, May 2006 State Occupational Employment and Wage Estimates: Massachusetts, http://www.bls.gov/oes/2006/may/oes_ma.htm#b37-0000 (last visited November 13, 2012).

instituted foreclosure proceedings and held a foreclosure sale on November 23, 2011. The sale was conducted by Karen Ferro ("Ferro") as a representative of Orlans Moran PLLC ("Orlans Moran"), which acted under a power of attorney from Fannie Mae. Despite the foreclosure sale, Figueroa apparently continues to live in the house.

## II. Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must allege sufficient facts to make the plaintiff's claim plausible. Id.

## III. Analysis

Figueroa asserts seven counts in her complaint, all of which defendants challenge for failure to state a claim.

### A. Count I

Figueroa claims in Count I that defendants owed her a duty of good faith and reasonable diligence in exercising their power of sale under the mortgage, and that they violated that duty by carrying out the foreclosure sale while she was still under consideration for a loan modification. Defendants argue that their actions did not violate any duty to Figueroa.

Massachusetts courts have regularly reaffirmed that "a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." West Roxbury Co-op Bank v. Bowser, 87

N.E.2d 113, 115 (Mass. 1949). That principle, for instance, requires the mortgagee to properly advertise the mortgage sale as required by law. See id. It also requires the mortgagee to reasonably consider alternative buyers put forward by the mortgagor. Snowden v. Chase Manhattan Mortg. Corp., 17 Mass. L. Rptr. 27 (2003).

It is not clear whether the same principle requires mortgagees to refrain from foreclosure while a mortgagor's application for a loan modification is still pending. Compare Martins v. U.S. Bank, No. 11-11349-RGS, 2011 WL 4459135, at *1 n.3 (D. Mass. Sept. 26, 2011) (finding duty of good faith and reasonable diligence does not bar foreclosure while application for modification pending), and Alvarez v. U.S. Bank, No. 11-12324-FDS, 2012 WL 2394680 (D. Mass. June 22, 2012) (finding implied covenant of good faith and fair dealing does not bar foreclosure while second application for modification is pending), with In re Cruz, 446 B.R. 1, 4-5 (Bankr. D. Mass. 2011) (finding duty of good faith and reasonable diligence bars foreclosure while application for modification pending); and Orozco v. GMAC Mortg., No. 11-11135-FDS, 2012 WL 4581092 (D. Mass. Oct. 1, 2012) (finding implied covenant of good faith and fair dealing bars foreclosure while application for modification pending). In the cases that have found such foreclosure improper, two important factors were usually present. First, the plaintiff lacked notice that the pending foreclosure sale would actually be carried out, indicating bad faith on the part of the mortgagee. See, e.g., Orozco, 2012 WL 4581092 at *6 (finding "lack of notice to the debtor" to be "dispositive"). Second, the plaintiff alleged that the defendants had violated the Home Affordable Modification Program ("HAMP") Guidelines in foreclosing, thereby showing breach of a statutory

duty. See, e.g., Speleos v. BAC Home Loans Servicing, L.P., 755 F. Supp. 2d 304, 310-11 (finding that plaintiffs stated a negligence claim evidenced by defendants' alleged breach of the HAMP Guidelines). Figueroa has not alleged either that she lacked notice the foreclosure sale would actually proceed, or that the defendants violated the HAMP Guidelines.[2] Absent such allegations, she fails to state a claim for violation of the duty of good faith and reasonable diligence based solely on the fact that the foreclosure took place while her application for a modification was pending.

**B. Count II**

Figueroa's second count claims that the foreclosure sale was conducted in violation of Mass. Gen. Laws ch. 244, § 14, because the person conducting the sale was not a properly authorized agent of the mortgagee. As relevant here, the statute states that the mortgagee, "or a person authorized by the power of sale, or the [mortgagee's] attorney duly authorized by a writing under seal," may foreclose on the property. Defendants have submitted a power of attorney executed by Fannie Mae in 2008 granting the firm Orlans Moran the authority to act as its agent in certain real estate matters, apparently including the foreclosure at issue here. They have also submitted a certificate of appointment executed on December 13, 2011—twenty days after the foreclosure sale took place—by which Orlans Moran authorized Ferro to carry out the foreclosure sale, and ratified and confirmed the actions Ferro had previously

[2] Figueroa hints in her opposition to the motion to dismiss that the foreclosure may have violated the HAMP Guidelines. However, she has not pleaded in her complaint facts showing any breach of those guidelines. Without supporting factual allegations, she cannot claim the defendants breached their duty of good faith and reasonable diligence by violating the HAMP Guidelines.

carried out.[3] Figueroa argues that because Orlans Moran did not authorize Ferro to carry out the foreclosure sale in advance, it failed to comply with the governing statute, and so the foreclosure sale was void.

The Supreme Judicial Court of Massachusetts has recently reaffirmed that the power of sale in a mortgage can only be exercised in strict compliance with its terms. U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 50 (Mass. 2011). "Any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under these statutes is void." Id. Defendants have presented no authority for the proposition that a mortgagee can achieve strict compliance with the statutory requirements by subsequently ratifying the actions of an unauthorized person. Indeed, a similar argument regarding postsale assignments was explicitly rejected in Ibanez. Id. at 54.

The factual allegations in Figueroa's complaint raise a plausible inference that Ferro was not properly authorized to perform the foreclosure sale. Therefore, defendants' motion to dismiss Count II is denied.

**C. Counts III-VII**

Figueroa asserts five other causes of action in Counts III-VII of her complaint, all relating to the origination of her loans. Defendants argue that each count is time-barred, and that in any case each count should be asserted against Greenpoint as the loans' originator rather than against BANA or Fannie Mae.

[3]These documents have been filed as public records, they are expressly linked to the factual allegations of the complaint, and Figueroa does not challenge their authenticity. Therefore, the court may consider them on this motion to dismiss. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

In Count III, Figueroa claims that her November 2006 loans violated Mass. Gen. Laws ch. 183, § 28C, because they were made within sixty months of her original loan and were not in her best interest. In Count IV, Figueroa claims that she did not receive a settlement statement required by the Massachusetts Consumer Credit Cost Disclosure Act. In Count V, Figueroa claims that the loans were unfair and deceptive in violation of Mass. Gen. Laws ch. 93A, both because of the violations noted above in this paragraph and because they were made without regard to her ability to make the required monthly payments.[4] In Count VI, she claims defendants were unjustly enriched because the loans were unfair and deceptive. And in Count VII, she claims that she never received a notice of her right to cancel as required by Mass. Gen. Laws ch. 140D, § 10.

Mass. Gen. Laws ch. 260, § 5A, sets a four-year statute of limitations for all actions arising under consumer protection statutes, and Mass. Gen. Laws ch. 260, § 2A, a three-year limitations period for unjust enrichment actions sounding in tort. Figueroa does not challenge defendants' assertion that those statutes are applicable to her causes of action in Counts III-VII, or that all of these causes of action accrued in November 2006 when the loans were originated.[5] Because she did not file her

---

[4] Figueroa also asserts a violation of Mass. Gen. Laws ch. 93A based on the foreclosure of her home while her loan modification was pending. For the reasons given above, the court concludes Figueroa has not adequately pleaded unfair or deceptive practices in connection with the foreclosure.

[5] There may be a plausible argument that Counts V and VI in fact accrued when Figueroa made payments on the loans. It is not clear whether Figueroa actually did make payments to defendants on the loans; it appears from the complaint that she fell into default before her mortgage was assigned to them. Figueroa does not explain the

complaint until May 2012, Counts III-VII are untimely.

Figueroa advances three arguments to defeat this conclusion. First, she argues that the statute of limitations should be equitably tolled. However, she has not alleged any facts showing that she could not have discovered the violations as early as the day her loans were originated; at that point, she should have known the terms of the loans and what documents she had or had not received. See Salois v. Dime Sav. Bank of N.Y., 128 F.3d 20, 25-26 (1997).

Second, Figueroa argues that the enforcement of her loans constituted a continuing violation, citing McKensi v. Bank of America, No. 09-11940-JGD, 2010 WL 3781841 (D. Mass. Sept. 22, 2010). In that case, the court held factual allegations showing a bank knowingly enforced a loan that would predictably lead to the borrower's default could state a claim under Mass. Gen. Laws ch. 93A, even if the bank did not originate the loan. But here, Figueroa has not alleged facts showing that defendants acted with knowledge of the defects in her loan. McKensi therefore is not applicable. Absent allegations that Bank of America or Fannie Mae knowingly enforced an unenforceable loan, Figueroa has not stated a claim for any independent or continuing violation by defendants of Mass. Gen. Laws ch. 93A.

Third, Figueroa argues that defendants should be liable for Greenpoint's misdeeds as assignees of the loan. However, "the common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same

---

"numerous unwarranted payments" she allegedly paid defendants. Complaint ¶ 55. In any case, these counts are meritless because Figueroa has not alleged facts showing unfair and deceptive practices or unjust enrichment by BANA and Fannie Mae.

defenses against the assignee as he could have raised against the assignor." Ford Motor Credit Co. v. Morgan, 536 N.E.2d 587, 591 (Mass. 1989). It does not mean that Figueroa can claim against an assignee if she could have claimed against the assignor. See id. And in any case, the statute of limitations still bars those affirmative claims.

## IV. Conclusion

Defendants' motion to dismiss (Docket # 6) is DENIED as to Count II and ALLOWED as to all other counts (Count I and Counts III-VII).

November 26, 2012 /s/Rya W. Zobel

DATE RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE